UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FIRST WORLD LIMITED, a United Kingdom registered company, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MIBC HOLDINGS, LTD, a Nevada Corporation, *et al.*,<br><br>Defendants. | Case No. 2:18-cv-1997-KJD-VCF<br><br>**ORDER** |

There are two motions pending before the Court. The first is a motion to compel arbitration (ECF No. 17) filed by defendant, MIBC Holdings, LTD. Plaintiff, First World Limited responded (ECF No. 18), and MIBC Holdings replied (ECF No. 20). Next is a motion for summary judgment (ECF No. 19) filed by plaintiff First World Limited, to which MIBC Holdings responded (ECF No. 22), and First World replied (ECF No. 23). Having reviewed the parties' filings, the Court finds that they agreed to arbitrate any dispute arising out of their agreements in a March 2018 Memorandum of Understanding. Because the parties agreed to arbitrate and that agreement applies to First World's pending causes of action, the Court compels this case to arbitration and denies First World's competing motion for summary judgment (ECF No. 19) as moot.

**I.     Background**

In this breach of contract case, First World Limited and its sister company, Rincon Blue Water, LLC, seek accounting and recovery of $450,000 that it loaned to MIBC Holdings. First World intended the loan to start the early financing on a world-class resort and casino in Puerto Rico. Compl. 5, ECF No. 1. The parties memorialized their agreement in a memorandum of

understanding shortly thereafter. Id. at 6. The loan was to mature on September 23, 2018,[1] and MIBC Holdings executed a promissory note to that effect. Id. It also executed a Security Agreement and assigned 34,723,935 shares of co-defendant Global Payout Inc.'s stock as collateral. Id. First World claims that MIBC Holdings has breached the parties' agreements and has converted its $450,000. This suit followed.

Relevant here, the memorandum of understanding included an arbitration provision that covered "dispute[s] concerning any aspect" of the parties' agreement. Memo. of Understanding 5, ECF No. 1-1 ("MOU"). The arbitration provision identified the International Chamber of Commerce as forum for any potential arbitration and elected to apply Nevada law. The arbitration agreement provided,

> In the event of a dispute concerning any aspect of this Agreement, including breach of the Agreement or claim of breach thereof, the Parties agree to have the matter arbitrated under the International Chamber of Commerce (ICC) rules of conciliation and arbitration. The Jurisdiction and governing law will be Nevada.

Id. Each of the parties signed the memorandum of understanding, and there is no indication from the document itself that any party objected to the arbitration provision.

Shortly after First World filed its complaint, MIBC Holdings moved to enforce the arbitration agreement. First World opposes the arbitration agreement and has moved for summary judgment on each of its claims.

## II.     Legal Standard

The Federal Arbitration Act (FAA) created a clear federal policy favoring arbitration. See 9 U.S.C. §§ 1–16; Southland Corp. v. Keating, 465 U.S. 1, 10 (1984). It ensures that a written agreement to arbitrate is "valid, irrevocable, and enforceable" subject to normal contract principles of revocability. 9 U.S.C. § 2.  Any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24–25 (1983). And once a court determines there exists a valid arbitration agreement

---

[1] The complaint states that the loan would mature on September 23, 2013. Given that the parties did not meet until March of 2018, the Court assumes for the purposes of this order that the maturity date of the loan was September 23, 2018.

1   that agreement should be rigorously enforced. See Dean Witter Reynolds v. Byrd, 470 U.S. 213,
2   218, 221 (1985).
3       The Court resolves any doubt regarding the arbitrability of a case in favor of compelling
4   arbitration. That is not to say that the Court may unilaterally compel parties to arbitrate their
5   dispute. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (despite the "liberal
6   federal policy favoring arbitration," there is a clear exception to the policy when parties have not
7   submitted a particular dispute to arbitration). To the contrary, the parties must present a valid
8   agreement to arbitrate their dispute, and the arbitration provision must encompass the parties'
9   claims. Id. at 84; Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1120–21 (9th Cir. 2008). If a
10  party meets both of those prongs, the Court will compel the case to arbitration.

11  **III.     Discussion**

12      Arbitration is appropriate here as First World and MIBC Holdings' memorandum of
13  understanding contemplated submitting these very claims to arbitration. However, First World
14  argues that the memorandum of understanding is not enforceable because it was not a contract,
15  but merely an agreement to agree on a future contract. Alternatively, First World argues that
16  even if the memorandum of understanding was an enforceable agreement, the language of the
17  arbitration agreement was too ambiguous to enforce.
18      The memorandum of understanding is an enforceable agreement. The entire point of the
19  parties' memorandum of understanding was to govern their conduct throughout their transaction.
20  As such, the agreement set out several vital aspects of the parties' future course of dealing apart
21  from the arbitration agreement, including the proper use of the First World's $450,000 loan
22  (MOU at 1–2), the ownership percentages of the different entities (id. at 2–3), the acceptable
23  investments upon receipt of a letter of credit (id. at 3), and monthly distributions between the
24  entities (id. at 4). Ironically, these are the very clauses of the parties' agreement that First World
25  asks the Court to enforce in its complaint and motion for summary judgment. First World cannot
26  simultaneously ask the Court to enforce portions of the memorandum of understanding it likes
27  and omit the parts it does not. Either the memorandum of understanding is enforceable, or it is
28  not. Elsewhere, First World asks the Court to find that it is enforceable. First World cannot have

it both ways. Accordingly, the memorandum of understanding is a valid and enforceable agreement between the parties.

Next, First World claims that the language in the arbitration provision is too vague to enforce. First World takes issue with one sentence of the arbitration provision, which states, "[t]he parties hereto agree herewith without further protest to settle, any claim or dispute arising out of this Agreement in a friendly cooperative manner by discussion." MOU at 5. First World claims the sentence is too ambiguous to determine whether MIBC Holdings has complied. If the clause is not too ambiguous, First World argues, MIBC Holdings has not attempted to settle in a cooperative manner. Although not a model of clarity, that sentence does not muddle the clear and unambiguous arbitration provision that follows. There is nothing vague about two parties agreeing to "have [their] dispute arbitrated under the International Chamber of Commerce." Therefore, the arbitration clause is not too ambiguous to enforce.

First World also argues that the arbitration provision is unenforceable because its election of the ICC for arbitration is inconsistent with its election of Nevada law as governing law. See MOU at 5 (agreeing to arbitration under the ICC's rules while applying Nevada law). According to First World, the parties could not agree to ICC rules while also agreeing to apply Nevada law because the two are mutually exclusive. Not so. Parties often agree to arbitrate disputes using a preselected state's substantive law, and arbitrators are well suited to apply that law. Indeed, arbitrators frequently apply state substantive law while applying the arbitral forum's procedural rules. See Sovak v. Chugai Pharm. Co., 280 F.3d 1266, 1269–70 (9th Cir. 2002) ("we will interpret the choice-of-law clause as simply supplying state substantive, decisional law, and not state law rules for arbitration"). Therefore, the parties' choice of arbitral forum and selection of Nevada substantive law does not render this arbitration provision ambiguous or impossible to enforce.

In sum, the parties' memorandum of understanding—including the arbitration provision—is an enforceable agreement. The language of the provision does not render the agreement ambiguous or impossible to enforce. Therefore, given the presumption in favor of arbitration agreements (see AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650

- 4 -

(1986)), the Court will enforce the arbitration agreement in the parties' memorandum of understanding.

### IV.     Conclusion

Accordingly, IT IS HEREBY ORDERED that MIBC Holdings, LTD.'s motion to compel arbitration (ECF No. 17) is **GRANTED**.

IT IS FURTHER ORDERED that this case shall be **STAYED** pending the results of the parties' arbitration.

All other motions are denied as moot.

Dated this 10th day of August, 2020.

_____
Kent J. Dawson
United States District Judge